Good afternoon. Robert Klor for the Objector Appellant Diana Cantu-Guerrero. May it please the Court. This settlement gives more cash to the attorneys than the class. $10.8 million to the attorneys and $9.9 million to the class. That's a poor arrangement considering the defendant, Lumber Liquidators, is cash strapped. But they didn't just arrange to take the most cash. They arranged to take the most cash before the class gets anything through a quick pay provision. Meanwhile, the primary class relief is vouchers, which is tied to a company that class counsel have described as at continual risk for declaring bankruptcy. 85% of the claimants elected against vouchers, which shouldn't come as a surprise considering the allegations that Lumber Liquidators sold them flooring that outgassed formaldehyde and had durability issues. Inevitably, many of the 15% who did elect vouchers are not going to redeem those. The issue of quick pay falls under the fairness of the settlement analysis, correct? I agree with that, Your Honor, but I also agree that I would also advocate that it falls under the Rule 23A adequacy of representation. And I'm not just speaking as to the quick pay, but the entirety of the agreement, the disproportionate ratio of cash and the nature of the unique scenario of a defendant that has financial volatility and then linking the class to that volatility through vouchers. But prior to the amendments to Rule 23, which require now the timing and amount, I think timing and amount of the attorneys fees to be paid, prior to that, we're talking about the abuse of discretion consideration concerning the way in which the discretion, however, under Rule 23A, as the Supreme Court held in Walmart versus Dukes, and this Court noted in the recent speech opinion, the Court is required to apply strict scrutiny to the adequacy of representation, including adequacy of representation of counsel. And our argument is not only was there inadequate representation, but at the very least, the District Court was required to engage the argument that I'm making here now. So they should have at least addressed it. That's our position. And I don't think it's arguable that the Court did, either in the fee order or its order approving the settlement. Let me ask you this, kind of combining issues here. Hypothetically, if you're right on the outcome of the quick pay argument as well, it would seem like it would because you'd have to wait until the redemption unless you had some alternative provision of repayment in some way. I think they're intertwined. It's hard to separate the two issues. I'm not sure if that answers your question. But so I think not only does the CAFA violation call for an adjustment or reversal of the fee order, but it has to be looked at differently because CAFA requires application of strict scrutiny to the settlement itself, which has been articulated by the Ninth Circuit in H.P. Inkjet and then the Seventh Circuit in the Sinfuel opinion, which are cited in our briefs. I'm not sure if that's the question you're asking. So class counsel have tried to That's not what we're saying. I think I've explained that it's a broader argument than that. No court has authorized this specific type of arrangement we have here. The Pelzer versus Vassal opinion is really narrow. It doesn't have a disproportionate ratio of cash. The class in that case received considerably more cash than the attorneys. And also there's no voucher relief. So it wasn't at all the similar context. In any event, it's a paragraph addressing the quick pay in passing. And then I wanted to direct the court to a recent opinion from the Southern District of New York, which I regrettably had to file a Rule 28J letter last night. I apologize. That was after the amendment to Rule 23, wasn't it? Yes. It took into effect the new rule, which it didn't apply. That's true. That's true. That was after the new rule. But I think the analysis, from my perspective, the timing of fees is something that inherently is going to tie into fairness, whether it's in that rule or not. In any event, that opinion, which you can see in the Rule 28J letter, states the obvious, that paying the attorneys first is not in the best interest of the class. And that was without the additional circumstances we have here. Mr. Bacharach is going to address the CAFA violation in more detail, but I just wanted to make a few points in my minute left. First, if CAFA applies, the fees have to be reversed, because the fee order clearly violates Section 1712A by basing the fees off of coupons without considering the redemption value of the coupons. And as I mentioned, if CAFA applies, heightened scrutiny is required. And finally, the idea that making some cash available negates CAFA is contrary to both the language of the statute, which contemplates mixed settlements, and the Ninth Circuit easy savior opinion, where the court applied CAFA notwithstanding the cash relief. And I'll yield my time to Mr. Bacharach. Thank you. Thank you. Mr. Bacharach? May it please the Court, my name is Howard Bacharach. I'm here for Bryce Johnson. In answer to your question, yes. I think that's what he said right at the end that came to that. The entire case would be subsumed if you were to find that this is a coupon settlement and the court violated CAFA. That would be a decision you all would make as a matter of law after de novo review. It's not a question of discretion on the part of the district court whatsoever. CAFA is really interesting because there is no leading case in the circuit, and in fact, the two leading cases reached opposite conclusions. That would be the Ninth Circuit and HP Inkjet Printer, where they said that you can't do this, that you have to evaluate what the coupons are worth before you can set attorney's fees under CAFA. The Seventh Circuit said that's not entirely true in In Re Southwest Airlines. They talked about the fact that there are multiple sections in the statute. The first section says exactly what the Ninth Circuit says and what the judge did in this case in violation of the law, which is when you pay class counsel a percentage of a common fund, and the common fund consists of coupons or coupons mixed with cash, you can't calculate that percentage until after you have the redeemed value of the coupons. That's the issue, isn't it? Is it a coupon or not? Help us with that. I've read the cases, and it looks like you read a number of cases, and you can develop, I've counted about seven or eight factors that courts look to. Is there some definition that you advocate exists for a coupon, or do we just look at all the facts and the circumstances and make a fact-based decision? Ever since 2005 when Congress said coupons are going to be treated differently in class actions, class counsel have come up with a series of other names to call coupons so that they come outside of the statute. It's good lawyering, but not particularly useful for this court. Traditionally, a voucher was something that you got from a travel agent. In the United States, it has a different definition in England, but a voucher was something you got from a travel agent that you gave to a hotel, and the hotel used it to pay for the room. It's a holdover word from prior to the internet and prior to the easy transfer of money and so forth. You'd buy a trip, you would get a voucher for a hotel in Paris, you would show up at the front desk, you would give them a voucher. The case law talks about vouchers in terms of the real difference between a voucher and a coupon. A coupon is something that gives you a discount from the defendant, whereas a voucher allows you to get an entire thing. It's not a useful analysis whatsoever. In this case, they're coupons because, first of all, obviously the class knows they're coupons because the class didn't want them. You're saying what it is and what it's not. What's the standard that we should apply? The standard you should apply is, does the piece of the document, whether it's electronic or paper, that the class member received become some kind of negotiable instrument good anywhere? Not in this case. Does the document or electronic thing that the class member receives allow them to buy anything they want from a huge selection of things? That would be the compact disc case in Walmart where the appellate court said, well, jeez, you can buy pretty much anything at Walmart, so it's not a coupon because you can buy what you want. In this case, Lumber Liquidators sells flooring. They do sell other things. I've been in their stores often. They sell floor cleaner. They sell adhesive if you want to glue your floor down yourself. They sell underlayment, kind of like a tarping material that you can put under the floor before you lay the floor down. They do sell butcher block countertops, but they sell flooring. If you walk into Lumber Liquidators, then you look around. What you're going to see for purchase is flooring. It's not like walking into a Walmart or a Target. It's not like shopping online with Amazon. It's a one-trick pony. They don't have anything else going for them. They sell flooring. You get flooring. What's this case about? Bad flooring. What do the vouchers let you do? Well, they let you buy more flooring so that you can sort of replace some of the flooring. Class Council makes it seem as though you can take this voucher and go in and replace your floor. I don't think they said that. I think they said you might could in some circumstances. I think they said they have flooring products that you could perhaps buy in total. I mean, I get the difference in Lumber Liquidators and Walmart, but I guess to my point, it sounds like you're suggesting we apply all those various factors and look to it on a case-by-case basis rather than definition that is broader. I don't think there's a definition that's broader. I think that you could have a case, not this one, where the thing that the class member receives is intrinsically valuable and would be as good as getting cash. But the class members have clearly class members, much to the surprise of Class Council, have elected to take these stored vouchers because they're not useful to them. They're not freely transferable. In most of the 50 states, four-fifths of the 50 states, they expire in three years. And then you get into silly lawyer conversations, like, well, you could go and you could buy something with your voucher and then you could sell it to a third party or mail it somewhere else. You don't have to keep it yourself. But the whole point about a coupon and what Congress was trying to prevent courts and lawyers from doing because the district court has a fiduciary duty to protect the class, was to force the class members into further economic dealings with the defendant that injured them. So giving somebody a coupon or a voucher that then puts them back in the store with the defendant who injured them is what Congress intended this law to prevent. It is true, and I believe I'm way over time, but it is true that a voucher is in the best interest of the defendant. It brings the member of the class back into their store. It reinforces what the defendant is in business to do, which is to sell flooring. There is lost in my mind this one last thought, which is that the lack of transferability is a very major issue with regard to these coupons. And the court should consider that. There's no aggregating dozens of the coupons so that they have a true value to someone. This settlement prevents what would be a useful tool with regard to the store credit vouchers by not allowing them be aggravated like that. Thank you. Thank you. Mr. Toll. Thank you. May it please the court, Stephen Toll for the plaintiffs and the class. Your Honor, over my career, I know we have legal principles at stake, but most every case is fact-driven, and that really applies here. Both their lack of factual support for their argument, which undermines their, or the underpinning of their entire argument about the vouchers not being valuable, is this company's on the verge of bankruptcy and is about to fail. And I will get in a second why there's really, they have no factual support for that. And number two, on the coupon issue and voucher issue, under CAFA, the facts here again compel a finding that these are not coupons. I must say, first, Your Honor, to make sure, Judge Trenga really issued thorough opinions here. These were not like three-page opinions. I approve the settlement. Here are your fees. Nice job. He went through all the jiffy loop factors in detail very thoroughly. He felt very strongly that these vouchers were very valuable components of this settlement, which I'll get into a little bit in a minute. They make this argument about this, you know, viability or lack of viability of lumber liquidators, and they cite things that, I mean, in their reply brief, they go into recent filings and so on. I don't want to go outside the record, but, because I could kind of destroy everything and show how viable it is, and there's no threat of bankruptcy at all. But they don't cite any auditor's report in any of the public filings saying that this company, you know, is a going concern. They don't talk about this is a company with a billion dollar in sales, increase in stores. So I want to be very careful not to go outside the record. I could say a lot more about the strength of the company. But there's no support that they're about to fail. And that underpins, in fact, I counted up, there's 21 times in their opening brief and 12 in their reply brief where they hit this point home that this company's about to fail. So these vouchers are likely worthless. And it's just false. There's just no factual support for the basic argument they're making. And, you know, you have to consider, too, what Judge Trengle was involved with here. He was involved in basically two MDLs. There were over 100 cases filed. In all my years, I have never seen a judge in a complicated class action, I've been doing these cases for too long, exercise such control over his docket. He had virtually monthly status conferences. He went over with plaintiffs and defense counsel everything that was going on in the case, how many depositions you're taking, how many experts, motions to dismiss, motions to re-judgment, discovery conferences on motions to compel, 49 depositions were taken, 10 experts. He had Magistrate Judge Jones sit in on every one of these conferences. So they attack adequacy of counsel. We've got a judge who assessed this thoroughly, knew everything what was going on in this case. Counsel, can I? Yes, Judge. I don't mean to get you off track, but I think you've made good points about the standard review on the first aspect of this, and we do have a standard that we should not be completely micromanaging the district court, who did do a lot of good work here. The question I have, though, is about the definition of the coupon, which is a legal question, I think. Oh, I'll get to that. Would you like that now? I'll go to that argument. That's what I'm interested in, and other judges may have different points, but that's a de novo issue for us, and I want to understand what you believe the definition of a coupon is. I will do that in one second, Your Honor, before I forget the one other point that is so critical to this on the first issue. Okay, sure. Judge Brinkman. Heard about her in the last case. They ignore this, the objectives in their brief. Judge Tranga knew this was a very complicated proceeding. We had failed mediation efforts early on. He appointed Judge Brinkman as the mediator. We sat down with defense counsel, the general counsel of Lumber Liquidators, and ironed out this settlement agreement, which provided great value in cash, which the company really didn't have, and we insisted on more. They only had $5 million, and we said, we're not going to take $5 million. She was able to get them to sell treasury stock, get more, got coupons. She thought this was a great settlement. She was involved in every step of the way. They make arguments that plaintiff's counsel somehow took advantage of the class or things like that. We've got this two federal judges, but one intimately involved in every aspect of settlement. We didn't do this outside on our own, so I just want to make sure the court, it's such an important factor that they seem to ignore. Now, on to CAFA and coupons. Your Honor's questions before, there is no set definition. Really, it's factually driven. Should we consider dictionary definitions of coupons? I don't think so, Your Honor. I really think what's important first is, of course, legislative history. What was this statute put in place for? And not for a case like this. And you read the Senate reports. They're talking about when plaintiff's lawyers tried to just jump up the value of a settlement, which had basically no cash or de minimis cash, and say, look, here's $3 coupons. I'll give credits, they call them, and I'll give it to the class. And there were 10 million class members, and so now you've got a $30 million settlement, and I want a big fee. The Senate report talked about examples of coupons, $30 to $40 off on a cruise, $55 off on a purchase of a new baby crib, where you know you've got to spend a lot more, $1.25 off on a $25 video game. We have a voucher here worth $695 on average to the class members. It's an incredible return. It is 60% of their purchase price. In fact, the damage of analysis of our expert came up with a total damage of about $175 million, but it was based on 30% of our getting double what their damage would have been if we went to trial. I mean, it's a terrific result. One of the key factors, Your Honor, is choice in this settlement agreement, and it permeates everything because they have no cases, none, where a court found where choice was given to class members, what they wanted, and the court said it's a coupon. It's because class members, the voucher or the coupon cases and the credit cases where claims counsel throws this thing to them and the class members, some may want them, but most may say, forget it, I'm not going to bother with $2 or $3 or whatever. This is a big number, but the class members were given an option. Do you want cash or do you want coupons? One of the issues when those options are offered is actual choices that are made. I forget the case, but at least one or two of the cases looked to see in determining whether it's a coupon or not, how many elected the cash versus the coupon, and here, contrary to the thoughts, a lot more selected cash in this particular situation. And there is probably a reason for that, which I can explain, but yes, more did because in the which was based on it was like 60% or so picked cash or 65, and now this one was higher. But one reason was there was a lot of publicity about this, and there was a lot of questions raised about are these products harmful to class members? And after a number of years, first of all, the whole issue of off-gassing pretty much was eliminated in a very short time period, whether it was a month or two or three. We're now talking years later. People have had these in their homes and basically most people said, I don't probably, I don't feel there's a health risk. I mean, I've lived with this for years. We're not having problems. I don't need the voucher, but 15%, 27,000 people, it's not insignificant, 27,000 people said, I want the vouchers. Now, they have different choices. This gets to some of the factors that come up in some of the cases is what do you do with the $695 on average that you get? Well, you can go out and buy a new floor and replace your flooring. Some of that 27,000 probably want to do that. They could either get comparable flooring and maybe not spend a dollar more or a little bit less expensive, not spend a dollar more. Some may say, oh, you know what? I'll buy and I'll get $1,000. I'll put up $300. And others may say, you know what? I don't want flooring. They try to argue in their brief, there's very limited choices. Well, Lumber has 530 other products out there that people can get and not spend a dime out of their own pocket. They cited some of the products like countertops and so on, but there are hundreds of them. So some people who took the voucher where we said probably you're going to get a greater value, we didn't know how much we estimated, may have said, you know what? I can buy a lot of stuff with this voucher. And that's a good deal for me. And some others probably said, I'm going to use it for a floor. But the class members had choices. And I think, again, every court, Your Honor, has said, there's no case out there that I'm aware of where a court has seen a choice given and they said this is a coupon. Because it is critical because you're getting, it's not being foisted on the class members. Here it is. You've got to take it. You have a choice here and it's a critical fact to consider. But there are other factors that the courts have used and it's the online DVD case in Ninth Circuit. And again, when you look at those factors, they point to the fact that this is a voucher and it's not a coupon. So one of them is, is this credit only for a limited number of items? The objectors try to argue it is, but the fact is they don't have any support for it other than making these bold assertions. As I said, there's over 500 other products that lumber liquidators sell. It is not just the flooring company, even though that is a significant component of their business, no question. It looks to me like, I mean, I think there are some differences here in the cases that are what I would maybe call the going through the facts that the district court did in doing that effectively. I think you said you don't believe it applies and that may be true, but Merriam-Webster defines a coupon in 2005 at the time CAFAS passed as a printed document or slip used to submit orders or increase or to obtain a discount on merchandise or service. Would the voucher fall under that definition? Your Honor, it could in a particular case. And again, why I started out. Facts are important and the courts have looked at different factors. Then you could probably say every voucher is a coupon. In any case, the courts aren't doing that. They're looking at these various factors. And, you know, transferability and expiration are two other factors. Again, they try to say that there's limited expiration here. I would say the facts dictate otherwise. In 40 states, you've got three years to use them. In seven states, it's unlimited. This is a choice when this case, again, if there was no appeal, class members would have already gotten the benefit of these, gotten their cash and their vouchers. But, you know, people who want these vouchers, who selected vouchers, are going to use them three years. It's not like a 30-day, 60-day, 90-day short term. So expiration date, a factor saying it's not a coupon. Transferability. They could transfer to family members. They could transfer to relatives. They also, the objectors seem to ignore this, there is in the settlement agreement, and I believe it's JA 407.20, you can use the vouchers, buy a product and send it to anyone in the United States. So in a sense, you have complete transferability. So when you look at, and as I said, the first factor is do they have a limited number of products or a lot of products? Every single factor courts have used weigh in favor that this is not a coupon. Your Honors, and this is a question of law as opposed to the abuse of discretion standard on settlement approval. But if it is by chance, and again, a coupon, it wouldn't really change anything. Because at the end of the day, there are two ways to then analyze attorney's fees under CAFA. One is what I think Your Honor referred to this issue of redemption. How many will be redeemed and what's the value? And of course, in this type of case, to do that would be horrific because what does the district judge have to do? Wait for years to see how many people might redeem it before deciding fees. And if he does that, then class members who are going to get cash can't get cash because they have to wait to see how much the lawyers are going to get paid first. The judge has to make that decision. So it would be an absolute disaster to kind of send it back and look at this redemption issue. And the reason you don't have to worry about that is because of 1712B1, the other statutory provision in CAFA. And what B1 says is that if the coupon recovery is not used to decide that the redemption analysis is not used to decide fees, you award fees based on the time class counsel expended working on the action. And Judge Strenga did essentially that analysis anyway in his Lodestar cross-check. Besides having such a firm grip on every aspect of this case, he looked at the time counsel expended and the lead counsel put in the multiple law firms $12.5 million worth of legal time in both the formaldehyde. Remember, two MDLs, formaldehyde and durability. Then there was another $4.3 million put in by other counsel in the case who assisted us. So you're saying that if we find, even if we were to determine it's a coupon under B1, it doesn't require waiting until the redemption has occurred? Correct, Your Honor. You look at B1 and Judge Strenga essentially made the decision that the amount of work we did, we're being, I don't want to say underpaid, the wrong word. It's a lot of money. But we're getting less than the work we did. And we're either getting only 80% of our time if you look at $12.5 million, the $10.08 he awarded. Or if you look at the $16.8 million of us and the other counsel, then we're only getting 60% of our time. So the judge clearly felt the award was fair and reasonable. And there's really no basis to kind of, even if you've started considering that this was a coupon, he's essentially made the analysis of what is a fair and reasonable legal fee for counsel involved in the case. Did he address the, does he have to have addressed the objection of, yes sir? No, Your Honor. I don't believe so. And look, courts generally have to explain their rationale for decision-making on important issues. If an issue is either frivolous or if there's no collusion or inefficiency, the Ninth Circuit said this in the Volkswagen case, court does not have to address every single issue. The objectors did not even argue in their briefs that a quick pay is improper. You know, there's no case law out there. It's been approved by hundreds and hundreds of district court judges. And of course, the Sixth Circuit in the Pelzer case. Now, I know this Judge Pauly's decision from a week or so ago, and it's clearly an outlaw. There's no one else out there who has done this, so certainly not bind in a presidential. But the reason why, there's no harm to class members of lawyers getting paid ahead of time. Now, a court doesn't have to do that, but a court's allowed to do that. It's not a breach of the court's fiduciary obligation to the class or any kind of abuse of discretion under, it's in fact, it's not a factor. If you look again, they don't even argue. They argue adequacy failings of counsel. They don't argue fairness. But if you look under the jiffy loop factors on both in our brief, and in his opinion, actually, you know, this issue doesn't come up. And it's, you know, they cite this article by Professor Patrick back in 09, which says, back in 06 at least, one third of all class actions have quick pay provisions. And the reason, of course, and you referred to it, Your Honor, before, it's to prevent these professional objectors, and I cast no aspersions with these gentlemen, the professional objectors from coming in and messing up settlements and preventing class members from getting what they should get and trying to kind of blackmail plaintiff's lawyers to pay them off. That's what the purpose was, and it's been used effectively over the years for that, not in every case, but in many, many class actions. And again, until Judge Pauli a week or so ago, I'm not aware of any judge having a problem with it. So that's a different issue. It may very well have been reasonable. But the question is, does he have to address it? I don't think it's something that is encompassed in the rules. It's hard to say it's frivolous. Your Honor, again, I don't know whether it meets that standard. The fact that there's no authority ever until a week ago saying, you know, is anything wrong with it, could argue it's frivolous. But even if it's not, again, the court does not have to address any issue. And think about it. You'd send it back to him to then write an opinion saying, I don't think the quick pay harms anybody. It doesn't affect the class members. Plaintiff's counsel, when I appointed them, I looked at their background of financials. If they ever had to pay this back, they'll pay it back. There's not one case in history I'm aware of where plaintiff's lawyers didn't pay it back. So did he really have to address it? No. And it would be really terrible to delay payment to class members by another year or more to have them go back and address it and maybe them appeal again. So I do not believe he had to address it. Any further questions, Your Honor? I think I've basically ended up covering everything that I'd like to. Thank you. So the quick pay provision does harm the class, especially in this unique context. There's a limited amount of cash. They took most of it and then left the class with vouchers that are tied to Lumber Liquidator's ongoing financial viability. That argument was not the financial volatility argument. It was not our argument. That's their argument that they advocated before the judge in trying to sell the settlement, which is a substantial deduction of the $750 million in class You asked me about what the court can do in terms of if it reaches CAPA, does it need to reach the question on quick pay? I think as Mr. Bacharach pointed out, yes, there's a de novo review for CAPA. I agree that question needs to be addressed first. But I think the court should not just stop there. The settlement has to be reversed because, number one, you have to apply strict scrutiny under CAPA. And the court didn't do that. And then, number two, even if the fees are corrected under CAPA, it's possible that a disproportionate ratio on fees to class counsel survives. The quick pay will remain. And then Lumber Liquidators potentially could declare bankruptcy in the class that slept with primarily worthless vouchers. So I would argue that you can't, the court should not just defer to approval itself. And I would, you also have to reverse if CAPA applies. The lodestar argument that class counsel make that the fee can be upheld under 17-12-B-1 is not correct. If you look at the fee order, the district court submitted, included a very short analysis of the lodestar and acknowledged that it was not engaging in a proper lodestar methodology. It wasn't looking at the details. It was just accepting the summaries of class counsel as accurate and true. And we urge the court to require more so that it could conduct a proper lodestar analysis. But it did not. If you look at the order, it clearly did not. So the fee cannot be upheld under 17-12-B-1. Thank you. Assuming it's a great settlement and the best that class counsel could do under the circumstances is $20 million in cash and $14 million in coupons, doesn't obviate the issue of whether or not the attorney's fees that were granted by the district court were correctly made as a matter of law. When you pay this as a common fund and say that the common fund equals $36 million, you are making an error under 28 U.S.C. 17-12-A. You can't get past that unless, as Judge Quaterbaum pointed out, you decide that they're not coupons and this isn't a coupon settlement. That would be a bad result in this case for the class because what really happened here was that instead of the class counsel getting 28% of $20 million, they got over 50% of $20 million. So all the cash got drained out of the settlement, ended up in class counsel's pocket, and the other less than 50% of the cash is what was used to pay class members or will be by counting $14 million in coupons as $14 million but not asking class counsel to take 28% of the $14 million in coupons as coupons. And apparently they're great coupons. These vouchers are freely transferable. They're good for years. I'm sure class counsel could make great use of them, but the class members have rejected that. It does put the court in the conflict between the ninth, well, in the long run, sorry, not in this decision. In the long run, the issue has not been decided in the Fourth Circuit whether or not, if these are coupons, the court could use 28 U.S.C. 12B to do a Lodestar analysis and pay class counsel ignoring the fact that $14 million in coupons. That's not what happened here. The district court considered the coupon value, I think. So B1 seems to apply when the coupon value is not considered. That's correct. So I think we have to squarely address whether it's a coupon under A. Yes. If you decide it's a coupon under A, then the appellants win. The case gets sent back. Class counsel can get paid in two steps. I don't believe there's under CAFA that would prevent that, but they could get paid on the cash that's available at the beginning and they could get paid on the redemption value at some point in the future, but you can't commingle the two concepts under A. I actually have 30 seconds left. These are clearly coupons, Your Honors. There may be 519 things that you can buy from lumber liquidators, but it's hard to imagine. They sell flooring and they sell products that clean flooring and products that glue flooring down. And as I've said, but I have a tendency to be redundant according to my wife, the class members already voted on this and they don't want these coupons because they know they have little or no value for them. Thank you. Thank you. We'll ask the clerk to adjourn the court for today and we'll come down to greet counsel. Thank you. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Roger L. Gregory, Robert B. King, A. Marvin Quattlebaum Jr.